[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In 1987 and for thirty years prior thereto the plaintiff, an 84 year-old woman with an eighth grade education, was the owner of a farm containing 100 acres, more or less, located in the Towns of North Granby and Hartland. In the summer or early fall of that year a Mr. Connerton came to her home and indicated an interest in purchasing the property. The plaintiff said she wasn't interested in selling at that time.
In September of 1987 Richard Merritt, a real estate broker, approached Janet Sandelli, daughter of the plaintiff, and told her that he had been talking to two of the plaintiff's sons about the fact that Mr. Connerton was interested in purchasing the plaintiff's farm. He suggested that a meeting take place with the plaintiff, and further stated that he would like the opportunity to be the plaintiff's real estate agent in the event that she decided to sell the property.
On or about September 12th a meeting took place at the plaintiff's home. Present were Mrs. Sandelli, Mrs. Sandelli's husband, Mr. Merritt, and the plaintiff. The plaintiff showed some interest in selling the property and the discussion concerned the number of acres, the condition of the house, and the condition of the road. Mr. Merritt said he CT Page 6127 thought the property was worth at least one million dollars. Merritt also asked the plaintiff if she knew the defendant, Henry Gwiazda, an attorney and former probate judge. She said she knew him through the Shuttle Meadow Country Club where she had worked for fifty years. Merritt suggested that he bring Gwiazda over to discuss the sale of the property.
On September 21, 1987, another meeting took place at the plaintiff's home. Present were Mrs. Sandelli and her husband, the plaintiff, the broker Merritt, and defendant Gwiazda. The plaintiff explained that if she sold the property, she wanted a clean sale (payment in cash), that the property should be sold as is, and that she wanted no mortgage back. She further stated that she wanted to make sure that upon receipt of any money, her son Edward who was ill would be protected and taken care of. At that meeting, Merritt handed her a paper entitled "Exclusive Right to Sell" (Plaintiff's Exhibit B). This gave Merritt the exclusive right to sell her property for a period of 182 days at a rate of 10% commission. The plaintiff signed the paper, at which point she heard Gwiazda say that he would take 5%. She thought he was joking.
In November Gwiazda called the plaintiff on the telephone and told her that he was holding a $50,000.00 deposit toward the purchase price of the farm which was to be sold to Mr. Connerton. On November 18, 1987, Gwiazda and his wife came to the plaintiff's home with a real estate purchase agreement. (Plaintiff's Exhibit C). The agreement provided for an initial deposit of $10,000.00, and the following additional pertinent terms:
 "IN CONSIDERATION WHEREOF, Buyer promises to and with Seller that Buyer will pay to Seller the following further sums as consideration for the purchase of the premises:
 "a. As additional deposit upon signing of this agreement, $40,000.00 — receipt of which is hereby acknowledged.
 "b. Balance of purchase price on or before March 31, 1988, $950,000.00.
 "1. All deposits hereunder shall be held in escrow by Seller's Attorney Henry J. Gwiazda until Closing, except as may be otherwise provided herein.
"2. Seller is to provide an A-2 Survey CT Page 6128 of the premises within 30 days of receipt of the $40,000.00, second deposit. Price is based on acreage and there shall be a pro rata reduction in purchase price for less than 100 acres and a pro rata increase for more than 100 acres as found and shown by the surveyor. Surveyor shall be duly authorized and certified under applicable Connecticut regulations and statutes pertaining thereto."
Said agreement, which was prepared by Connerton's attorney, had no provision for a purchase money mortgage.
The plaintiff signed said document in front of the Gwiazdas who also signed as witnesses. The plaintiff made it very clear to Gwiazda that she did not want any mortgage — that she wanted "a clean break." She expected that upon the sale she would be getting a million dollars or more. Gwiazda explained to the plaintiff that he was going to make a will for her, that he would invest her money for her, that he would arrange an estate plan for her including a trust, that he would make a lot of money for her, and that he would arrange to save her money on taxes.
She told him she was very concerned about her son Edward who was ill and that her main concern was that he would be taken care of. Gwiazda indicated that he would provide for Edward in the estate plan.
In January of 1988 defendant prepared an attorney retainer contract for Mrs. Beckman's signature. (Defendant's Exhibit 4). She testified that she did not remember signing it and that she would not have signed it if she understood what it said. It provides as follows:
 "I, NATALIE BECKMAN, of 64 Seneca Street, New Britain, Connecticut, as "seller" of my premises known as 279 Granville Road, North Granby, and Hartland, Connecticut, consisting of one hundred ten acres more or less, as more fully described in a A-2 Survey of said premises, do hereby confirm and retain the services of Lawyer Henry J. Gwiazda for the conveyance of these premises to THOMAS J. CONNERTON, of 60 Silver Street Granby, Connecticut, the "Buyer" of said premises as more fully described in a Real Estate Purchase Agreement entered into on November 18, 1987.
"In addition to legal services rendered transferring CT Page 6129 above said properties, Lawyer Gwiazda shall plan my estate as defined and described in Connecticut Code of Professional Responsibility DR 2-105 A Section 14.
 "The compensation for said services shall be five per cent (5%) of the gross estate or of the sale price of said property, whichever is the greater. Lawyer Gwiazda may, in his discretion, incur reasonable and necessary expenses required for the sale of said premises, which charges are to be debited against the sale price received. Associate attorneys may be employed by Lawyer Gwiazda at his discretion and expense."
Although the closing was scheduled to take place on March 31, 1988, in accordance with the real estate purchase agreement, it did not take place on that date because the buyer was unable to come up with the balance of the purchase price by that date.
A closing took place on April 15, 1988, in the office of Attorney Edward Januszewski. Januszewski had been employed by Gwiazda to prepare all the necessary documents in regard to the sale of the plaintiff's property and to handle the closing. Gwiazda never notified the plaintiff of that fact, however, and she was surprised to find that the closing took place at Januszewski's office.
Present at the closing were Januszewski, Gwiazda, the plaintiff, the plaintiff's daughter Janet Sandelli, the plaintiff's son Ronald, the real estate agent Richard Merritt, and various people representing the buyer of the property (North Granby Development Associates). It was at that closing that the following documents were signed:
1. Deeds of the property in Hartland and North Granby from the plaintiff to the Seller.
2. A mortgage deed and promissory note (Plaintiff's Exhibits F and H) signed by the partners of North Granby Development Associates, the buyer. The note provided that the buyer promised to pay the sum of $960,000.00 to the plaintiff, with interest payable monthly, until January 15, 1989 when the principal and accrued interest would be due in full.
3. An adjustment sheet for the sale of that portion of the farm located in Hartland. (Plaintiff's Exhibit G). It provided for a purchase price of $60,000.00. CT Page 6130
4. A letter signed by the plaintiff in regard to the Hartland property. (Defendant's Exhibit 6).
5. An adjustment sheet for the sale of that portion of the farm located in North Granby. (Defendant's Exhibit 1). It provided for a purchase price of $1,150,000.00, payable as follows: $50,000.00 deposit, $960,000.00 purchase money mortgage, plus $479.94 as an adjustment for taxes, leaving a balance due the plaintiff in the amount of $140,479.94.
6. A financial statement showing disbursements from the balance due the plaintiff in the amount of $200,479.94. ($60,000.00 from the sale of the property located in Hartland and $140,479.94 due from the sale of the property located in Granby). (Plaintiff's Exhibit A).
The financial statement provided for disbursements as follows:
 Richard H. Merritt, Broker $121,000.00 Commissioner of Revenue Services 5,175.00 Commissioner of Revenue Services 270.00 Granby Town Clerk 1,265.00 Hartland Town Clerk 66.00 Januszewski, McQuillan DeNigris 1,500.00 Henry J. Gwiazda 60,500.00 Natalie Beckman 10,702.94
Although Gwiazda claimed at trial that he explained all the papers to Mrs. Beckman at the closing, the court finds that she did not in fact understand what was going on. She had never been told that Attorney Januszewski was to handle the sale of the property. She was never told prior to the closing that she was going to receive a purchase money mortgage instead of cash, nor was her permission ever sought in that regard. Gwiazda himself testified that he knew nothing about the purchase money mortgage prior to the closing. She was never told that Gwiazda's fee was going to be $60,500.00. Nor was she told that she would have to pay an additional $1,500.00 to Attorney Januszewski for handling the closing. In fact, Defendant's Exhibit 4 specifically states that "[a]ssociate attorneys may be employed by Lawyer Gwiazda at his discretion and expense". (Emphasis added.) Thus, Mrs. Beckman left the closing with a check for $10,702.94 and a purchase money mortgage in the amount of $960,000.00 when she had expected to receive somewhere near a million dollars as payment in full. In the meantime, Gwiazda left the closing with $60,500.00, the broker Merritt left with $121,000.00 and Januszewski left with $1,500.00 (which amount should have been paid by Gwiazda). Subsequently, she received from Gwiazda the sum of $39,000.00 representing the $50,000.00 CT Page 6131 deposit, less $11,000.00 for a survey.
On the day after the closing and for several days thereafter the plaintiff attempted to call Gwiazda three or four times a day in order to obtain an explanation of what happened at the closing and an explanation of why she only received a check for $10,702.94. She was never able to reach him, however, and she finally gave up. She never heard from him again in regard to the sale of her property, or in regard to any will or estate plan.
In January 1989 when the principal on the mortgage became due, the buyer was unable to make payment. The buyer also claimed that there was an error on the survey ordered by the buyer and for which the plaintiff had paid $11,000.00. (Defendant's Exhibit 3). It was determined that the plaintiff had sold fewer acres than the survey had shown, and it became necessary for the plaintiff to renegotiate the terms of the sale. After renegotiation she ended up giving the subsequent buyers of the North Granby property a credit of $175,000.00 and another mortgage arrangement. (Defendant's Exhibit 5). The court finds that whatever the defendant did in regard to the plaintiff's affairs was minimal at best. From the evidence presented it appears that he did only the following:
 -He met the plaintiff at her home with the real estate agent on September 21, 1987.
 -He and his wife witnessed the signing of the real estate purchase agreement which had been prepared by the buyer's attorney. (Plaintiff's Exhibit C).
 -He prepared the attorney retainer contract (which provided for an unreasonable fee for himself).
 -He held the initial $50,000.00 down payment in escrow.
 -He forwarded $39,000.00 to the plaintiff after the closing, said sum representing the initial deposit of $50,000.00 less $11,000.00 paid to the surveyor. (Defendant's Exhibit 7).
 -He wrote a letter to Thomas Connerton dated October 29, 1987: in which he returned a check in the amount of $10,000.00. (Defendant's Exhibit 8). CT Page 6132
 -He sent a letter to Robert J. Petrovic dated November 18, 1987 in regard to payment for an appraisal. (Defendant's Exhibit 11).
 -He sent a letter to Thomas Connerton dated November 10, 1987 concerning the real estate purchase agreement which had been negotiated by the real estate agent and prepared by the buyer's attorney. (Defendant's Exhibit 12).
 -He attended the closing, but prepared no documents in regard thereto.
It is the court's opinion that the plaintiff is entitled to a return of $60,500.00 which was paid to Attorney Gwiazda, for the following reasons:
1. Any negotiations, if any, in regard to the sales price were done by Merritt, the real estate broker.
2. The real estate purchase agreement (Plaintiff's Exhibit C) was prepared by the attorney for the buyer.
3. All other documents in connection with the closing were prepared by Attorney Januszewski.
4. The buyer arranged for the survey to be done.
5. Gwiazda did not arrange for the plaintiff to have a clean cash payment when the sale went through even though he knew that was one of the plaintiff's requirements.
6. Gwiazda did not adequately explain any of the documents to the plaintiff so that she understood what she was signing.
7. Gwiazda did nothing to find out if the buyer was economically sound. Thus, the plaintiff had the additional problem of not being paid when the principal became due.
8. Gwiazda did nothing in regard to an estate plan for the plaintiff either before or after the closing.
9. Gwiazda made no will for the plaintiff and failed to prepare any documents for the protection of the plaintiff's ill son. CT Page 6133
 10. The fee provided for in the "Attorney Retainer Contract" was unreasonable in that it provided for "5% of the gross estate or of the sale price of said property whichever is the greater."
11. Gwiazda failed to pay the attorney's fee of $1,500.00 which was charged by Attorney Januszewski and taken from the proceeds of the sale. Yet the Attorney Retainer Contract provided that if Gwiazda employed associate attorneys, it would be at his expense.
The court finds that the defendant was negligent in his dealings with the plaintiff in that: He violated Rule 1.1 of the Connecticut Practice Book Rules of Professional Conduct by providing incompetent representation; He violated Rule 1.2 by failing to abide by his client's decisions concerning the objectives of representation, He violated Rule 1.3 in that he failed to act with reasonable diligence in representing his client; He violated Rule 1.4 in that he failed to keep his client reasonably informed about the status of her matter; He violated Rule 1.5 in that his fee was unreasonable. In short, he failed to perform the services which he had contracted to perform, and anything he did do was so minimal or negligent as to not justify a fee.
Accordingly, judgment may enter for the plaintiff in the amount of $60,500.00, plus interest at the rate of 8% from April 16, 1988, plus costs.
FRANCES ALLEN SENIOR JUDGE